UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Mary Ellen Henderson,

                              Plaintiff,

        v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

18-CV-975 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 11, 16.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

2

Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the various issues that plaintiff has raised, the one that draws the Court's immediate attention concerns her diagnosis of breast cancer just weeks after her date last insured. Plaintiff's

date last insured was March 31, 2010. On May 4, 2017, plaintiff applied for benefits and claimed a disability onset date of January 1, 2005. [173.] Plaintiff claimed breast cancer as one of her disabling conditions. [229.] A routine mammogram in June 2009 was negative, but a "moderate amount of fibroglandular tissue" was noted. [488.] The finding of fibroglandular tissue was consistent with an April 2010 discussion in which plaintiff "reported a personal history of fibrocystic breasts." [684.] There is some suggestion in the record that plaintiff's primary care physician downplayed any breast lumps in 2009 as byproducts of anxiety or stress. [1174.] On March 16, 2010, just days before her date last insured, plaintiff had a comprehensive discussion with physicians about the possibility that she had a hereditary cancer syndrome that produced her colon cancer but that could produce "associated cancers." [682.] Plaintiff had at least some family history of breast cancer. [685.] Plaintiff had a biopsy on May 14, 2010 [489] and an MRI on May 26, 2010 [495]. The testing confirmed the presence of right breast cancer. [691.] Notably, a clinical note dated May 21, 2010 contains an observation that plaintiff noticed "a mass in her breast over the last few months" [691], which could reach back to the date last insured.

Despite multiple clues in the record, however, that plaintiff was developing breast cancer before the date last insured, the ALJ did not address the possible condition on the merits. Instead, the ALJ addressed plaintiff's breast cancer in one sentence: "The claimant has also been diagnosed with breast cancer in 2010, but this diagnosis was after her date last insured." [16.] Plaintiff finds error in this dismissal. "Once she was diagnosed in May 2010, the cancer was identified to be invasive ductal carcinoma was SBR grade 3 with associated lymphoid infiltrate, lymphovascular invasion, and ductal carcinoma in situ, cribriform type, nuclear grade 3, a minor component, and also estrogen and progesterone positive. (Tr. 714). As Plaintiff's mass was discovered during the insured period, her breast cancer diagnosis related to the insured period." (Dkt. No. 11-1 at 15.)

4

The Commissioner defends the ALJ's decision not to review plaintiff's breast cancer because the formal diagnosis occurred after the date last insured. "The existence of a disability prior to the expiration of insured status must be established by adequate medical evidence. Without such objective medical evidence, Plaintiff cannot sustain her burden of proof solely by means of her testimony that she was disabled at the crucial time." (Dkt. No. 16-1 at 15.) On the merits, the Commissioner argues further that plaintiff has not shown how she was disabled by her breast cancer before the date last insured. "Plaintiff notably offers no evidence that breast cancer caused any work-related limitations prior to treatment. And severity is assessed based on limitations arising from an impairment, not its diagnosis . . . ." (*Id.* at 16.) Plaintiff essentially considers the Commissioner's arguments an attempt at backfilling, since the ALJ did not consider the substance of plaintiff's condition at all. "Defendant focuses on whether it constituted a severe impairment and asserts Plaintiff was required to show it caused work-related limitations. However, the salient issue is the ALJ's failure to consider it at all. In other words, he refused to even acknowledge it as a medically determinable impairment." (Dkt. No. 19 at 2.)

This case presents a close call, but plaintiff has the better argument here. Generally, the Commissioner is correct that "to be entitled to a period of disability an applicant must file an application while disabled, or no later than 12 months after the month in which the period of disability ended." *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) (internal quotation and editorial marks and citation omitted). Additionally, "subjective complaints alone are not a basis for an award of disability insurance benefits in the absence of corroborating objective medical evidence." *Mauro v. Comm'r*, 746 F. App'x 83, 84 (2d Cir. 2019) (summary order) (citations omitted). That said, "we have determined that when, as in this case, a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of a claimant's condition, evidence

5

of that diagnosis is material and justifies remand." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (citations omitted). Critically for plaintiff, evidence that at least has some origin during the relevant time period and that potentially affects the Commissioner's assessment of the claimant's overall condition should receive appropriate review. *See Pollard v. Halter*, 377 F.3d 183, 194 (2d Cir. 2004) (remand required where new evidence "may identify additional impairments which could reasonably be presumed to have been present") (internal quotation marks and citation omitted); *see also Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) ("Here a treating physician has for the first time diagnosed a neurological cause of Tolany's serious condition, which had previously been assessed and treated only as a urological impairment. Her condition must now be assessed in relation to the neurological impairments listed in Appendix 1, §§ 11.00–11.19."). Here, plaintiff listed breast cancer as a disabling ailment in her original application. Plaintiff mentioned her potential genetic predisposition and her own discovery of her breast lump at the hearing before the ALJ. [87.] Plaintiff almost certainly did not progress to a grade-3 type of breast cancer in just a few weeks between her date last insured and the date of her official diagnosis. The Court lacks the medical expertise to rule out categorically that plaintiff's developing breast cancer had some indirect impact on her overall condition or on the conditions that she reported in her application. *Cf. Snider v. Comm'r*, 328 F. Supp. 2d 703, 710 (E.D. Mich. 2004) (remand required where a new "report constitutes the first objective evidence that documents a closed head injury that includes cognitive deficits. It diagnoses dementia and confirms impairments in areas not previously discussed by the treating doctors, namely problems with concentration, attention, abstract reasoning, visual and motor ability, and verbal memory."); *Pickard v. Comm'r*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (remand required where new "evidence is arguably probative of Pickard's condition during the relevant time period"). The Court prefers to see plaintiff's information receive some consideration,

because the ALJ's current "logic presumes that evidence after the date last insured is *per se* irrelevant, and that is a logical error." *Robinson v. Berryhill*, No. 17-CV-8842 (ER)(SN), 2019 WL 2453346, at *9 (S.D.N.Y. Jan. 25, 2019) (citations omitted), *report and recommendation adopted sub nom. Robinson v. Comm'r*, No. 17CIV8842ERSN, 2019 WL 1004140 (S.D.N.Y. Feb. 28, 2019). The lack of consideration distinguishes this case from *Mauro*, where the ALJ reviewed the record and made a specific finding that the claimant's "medical sources did not have records regarding diagnosis or treatment of cancer from her alleged onset date through her date last insured." *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017) (internal quotation marks omitted), *aff'd sub nom. Mauro v. Comm'r*. Given the non-adversarial nature of Social Security proceedings, plaintiff should have received a more substantive finding about her breast cancer condition, even if additional records would have been necessary.

In requiring remand, the Court takes no position on what the Commissioner ultimately should decide about plaintiff's breast cancer or how it should fit under the five-step analysis. The Court also will not address any other issues that the parties have raised. For example, plaintiff has argued that a cognitive disorder also received short treatment by the ALJ because of a conflict with the date last insured. [16, 189.] That condition might also face the same problem as with plaintiff's breast cancer, but the Commissioner can address it in the first instance.

7

## III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 16). The Court grants plaintiff's cross-motion (Dkt. No. 11) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: January 8, 2020